## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

NEW HAMPSHIRE INSURANCE COMPANY
and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

          Plaintiffs,

v.

TSG SKI & GOLF LLC, THE PEAKS OWNERS
ASSOCIATION, INC., PEAKS HOTEL LLC,
and H. CURTIS BRUNJES,

          Defendants.

Case No. _____

## COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

New Hampshire Insurance Company ("New Hampshire") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), for their Complaint for Declaratory Judgment and Reimbursement against TSG Ski & Golf LLC ("TSG"), The Peaks Owners Association, Inc. ("the POA"), Peaks Hotel LLC ("Peaks Hotel"), and H. Curtis Brunjes ("Brunjes"), state as follows:

## NATURE OF THE ACTION

1. New Hampshire and National Union seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that they owe no duty to defend or indemnify TSG, the POA, Peaks Hotel, or Brunjes in the lawsuit entitled *Peaks Capital Partners, LLC; Telluride Resort & Spa, LLC; Highlands Resorts at the Peaks, LLC; and Edward D. Herrick, Jr. v. H. Curtis Brunjes; TSG Ski & Golf, LLC; The Peaks Owners Association, Inc.; Peaks Hotel, LLC; and Haynie & Company, P.C.*, Case No. 2019CV30047, pending in the Colorado District Court, County of San Miguel (the

"Underlying Lawsuit").  Additionally, New Hampshire seeks reimbursement of amounts it paid to defend TSG, the POA, Peaks Hotel, and Brunjes in the Underlying Lawsuit.

## THE PARTIES

2.      New Hampshire is an Illinois corporation with its principal place of business in New York.

3.      National Union is a Pennsylvania corporation with its principal place of business in New York.

4.      TSG is a Delaware limited liability company with its principal place of business in Colorado.  At least one member of TSG is a citizen of Colorado.  After investigation, New Hampshire and National Union believe no member of TSG is a citizen of Illinois, Pennsylvania, or New York.

5.      The POA is a Colorado nonprofit corporation with its principal place of business in Colorado.

6.      Peaks Hotel is a Delaware limited liability company with its principal place of business in Colorado.  After investigation, New Hampshire and National Union believe no member of Peaks Hotel is a citizen of Illinois, Pennsylvania, or New York.

7.      Upon information and belief, Brunjes is domiciled in Arizona.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2201(a) because New Hampshire and National Union seek a declaration of their obligations to TSG, the POA, Peaks Hotel, and Brunjes under certain liability insurance policies.

2

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to TSG's, the POA's, Peaks Hotel's, and Brunjes' request for insurance coverage for the Underlying Lawsuit took place in this district.

## THE INSURANCE POLICIES

### The New Hampshire Policies

11.    New Hampshire issued to TSG Company LLC a series of commercial package policies bearing policy nos. 01-LX-011738646-5, 01-LX-011738646-6, and 01-LX-011738646-7, effective for consecutive annual periods from November 1, 2017 to November 1, 2020 (collectively, the "New Hampshire Policies," and individually, for example, the "2017-2018 New Hampshire Policy").

12.    The New Hampshire Policies adds TSG, the POA, and Peaks Hotel as named insureds by endorsement.

13.    The insuring agreement of the New Hampshire Policies' Commercial General Liability Coverage Form, Section I – Coverages, Coverage A – Bodily Injury And Property Damage Liability states, in part:

1.     **Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion,

investigate any "occurrence" and settle any claim or "suit" that may result.

\* \* \*

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period . . . .

\* \* \*

14.     Coverage A of the New Hampshire Policies' Commercial General Liability Coverage Form includes the following exclusion:

**2.     Exclusions**

This insurance does not apply to:

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

15.     The insuring agreement of the New Hampshire Policies' Commercial General Liability Coverage Form, Section I – Coverages, Coverage B – Personal And Advertising Injury Liability states, in part:

**1.     Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to

4

which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

\*     \*     \*

**b.**     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\*     \*     \*

16.     Coverage B of the New Hampshire Policies' Commercial General Liability Coverage Form includes the following exclusions:

**2.**     **Exclusions**

This insurance does not apply to:

**a.**     **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.**     **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

17.     The New Hampshire Policies' Commercial General Liability Coverage Form, Section V – Definitions, states, in relevant part:

\*     \*     \*

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**     False arrest, detention or imprisonment;

**b.**     Malicious prosecution;

5

c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.    The use of another's advertising idea in your "advertisement"; or

g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\*    \*    \*

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18.    The New Hampshire Policies include an Amendment to Definition of Bodily Injury Endorsement, which modifies the definition of "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," and to include "mental anguish and emotional distress provided such mental anguish or emotional distress results from the bodily injury, sickness or disease."

**The National Union Policies**

19.    National Union issued to TSG Company LLC a series of commercial umbrella liability policies bearing policy nos. 29-UD-042864208-5, 29-UD-042864208-6, and 29-UD-042864208-7, effective for consecutive annual periods from November 1, 2017 to November 1,

2020 (collectively, the "National Union Policies," and individually, for example, the "2017-2018 National Union Policy").

20. The National Union Policies add TSG, the POA, and Peaks Hotel as named insureds by endorsement.

21. The insuring agreement of the National Union Policies states, in part:

A. We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B. This policy applies, only if:

1. the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**; and

2. the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your business, but only if the **Occurrence** was committed during the **Policy Period**.

22. The defense provision of the National Union Policies states, in part:

A. We will have the right and duty to defend any **Suit** against the **Insured** that seeks damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** covered by this policy, even if the **Suit** is groundless, false or fraudulent when:

1. the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by payment of **Loss** to which this policy applies and the total applicable limits of **Other Insurance** have been exhausted; or

2. the damages sought because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** would not be covered

7

by **Scheduled Underlying Insurance** or any applicable **Other Insurance**, even if the total applicable limits of either the **Scheduled Underlying Insurance** or any applicable **Other Insurance** had not been exhausted by the payment of **Loss**.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B.   We will have no duty to defend the **Insured** against any **Suit** seeking damages for **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance does not apply.

23.   The National Union Policies include the following exclusions:

*   *   *

**K.**   **Expected or Intended Injury**

This insurance does not apply to **Bodily Injury** and **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property.

*   *   *

**U.**   **Various Personal Injury and Advertising Injury**

This insurance does not apply to **Personal Injury and Advertising Injury**:

**1.**   caused by or at the direction of the **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury and Advertising Injury**;

**2.**   arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity . . . .

*   *   *

24.   The National Union Policies include the following definitions:

*   *   *

S.   **Occurrence** means:

8

1.  as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**.

2.  as respects **Personal Injury and Advertising Injury**, an offense arising out of your business that causes **Personal Injury and Advertising Injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

\*    \*    \*

U.  **Personal Injury and Advertising Injury** means injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious prosecution;

3.  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

4.  oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.  oral or written publication, in any manner, of material that violates a person's right of privacy;

6.  the use of another's advertising idea in your **Advertisement**; or

7.  infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

\*    \*    \*

Y.  **Property Damage** means:

1.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

       2.      loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **Occurrence** that caused it.

\*    \*    \*

25.    The National Union Policies contain an Amendment to Definition of Bodily Injury Endorsement, which amends the definition of **Bodily Injury** to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

26.    The 2017-2018 National Union Policy identifies the 2017-2018 New Hampshire Policy as Scheduled Underlying Insurance.

27.    The 2018-2019 National Union Policy identifies the 2018-2019 New Hampshire Policy as Scheduled Underlying Insurance.

28.    The 2019-2020 National Union Policy identifies the 2019-2020 New Hampshire Policy as Scheduled Underlying Insurance.

## THE UNDERLYING LAWSUIT

29.    Peaks Capital Partners, LLC ("Peaks Capital"); Telluride Resort & Spa, LLC ("Telluride Resorts"); Highlands Resorts at the Peaks, LLC ("Highlands"); and Edward D. Herrick, Jr. (collectively, the "Underlying Plaintiffs") filed their Third Amended Complaint and Jury Demand (the "Third Amended Complaint") in the Underlying Lawsuit on April 1, 2021. (*See* Ex. A, Third Am. Compl. at 1.)

30.    The Third Amended Complaint alleges that TSG, the POA, Peaks Hotel, and Brunjes (collectively, the "Defendants") designed and implemented a coordinated scheme to unlawfully coerce the Underlying Plaintiffs to pay monetary assessments to the Defendants. (Ex. A at 2 ¶ 1.)

31.    The Third Amended Complaint alleges that between 2009 and mid-2015, Telluride Resorts owned all 177 residential and commercial condominium units that comprise a development known as The Peaks, located in Mountain Village, Colorado.  (Ex. A at 2 ¶ 2.)

32.    The Third Amended Complaint alleges that between 2009 and mid-2015,  Telluride Resorts paid all assessment obligations imposed by the POA, which governs The Peaks, using an agreed-upon "true-up" process approved annually by the POA.  (Ex. A at 2 ¶ 3.)

33.    The Third Amended Complaint alleges that the POA determined at the end of each fiscal year whether Telluride Resorts satisfied its annual assessment obligations through Telluride Resorts' payment of ownership and maintenance expenses related to The Peaks' common areas. (Ex. A at 2 ¶ 3, 13-15 ¶¶ 46-48.)  The POA would allegedly determine—or "true-up"—Telluride Resorts' annual assessment balance by deducting Telluride Resorts' expense payments from Telluride Resorts' assessments due.  (Ex. A at 13-15 ¶ 48.)  Telluride Resorts would pay the balance, if any, of its assessments less its expense payments.

34.    The Third Amended Complaint alleges that since 2009 Brunjes has served as an officer and director of the POA, and, in that role, Brunjes approved Telluride Resorts' payment of assessments through the true-up process between 2009 and mid-2015.  (Ex. A at 2 ¶ 3.)

35.    The Third Amended Complaint alleges that, in July 2015, TSG acquired from Telluride Resorts 13 of the 14 commercial units in The Peaks and assumed control over the POA's board of directors.  (Ex. A at 2-3 ¶ 4, 21 ¶ 70.)

36.    The Third Amended Complaint alleges that TSG assumed control of the POA by appointing its subsidiary, Peaks Hotel, as manager of the POA.  (Ex. A at 2-3 ¶ 4, 21 ¶ 70.)

37.    The Third Amended Complaint alleges that as part of TSG's acquisition of units at The Peaks, TSG conducted extensive due diligence regarding The Peaks' operations and finances,

including communications with the Underlying Plaintiffs, who disclosed the assessment true-up process to TSG.  (Ex. A at 2-3 ¶ 4.)

38.     The Third Amended Complaint alleges that after TSG's acquisition of units from Telluride Resorts was complete, the Underlying Plaintiffs provided TSG with additional information regarding the true-up process, and TSG's accountants acknowledged Telluride Resorts' use of the true-up process between 2009 and 2015.  (Ex. A at 2-3 ¶ 4.)

39.     The Third Amended Complaint alleges Defendants knew that Telluride Resorts satisfied its assessment obligations in full between 2010 and 2015 using the true-up process, as authorized by The Peaks' governing documents, approved by the POA's officers and directors, and disclosed to TSG and Peaks Hotel in 2015.  (Ex. A at 3 ¶ 6.)

40.     The Third Amended Complaint alleges that in October 2018, Defendants commissioned an "internal audit" as part of their effort to coerce the Underlying Plaintiffs to pay assessments to Defendants that the Underlying Plaintiffs did not owe.  (Ex. A at 3-4 ¶ 7.)

41.     The Third Amended Complaint alleges that the POA and Brunjes delegated responsibility for the internal audit to TSG and Peaks Hotel, which in turn assigned audit responsibilities to Ryan Burke, a TSG accountant and recent college graduate.  (Ex. A at 3-4 ¶ 7, 32 ¶¶ 123-24.)

42.     The Third Amended Complaint alleges Defendants intentionally organized and manipulated the internal audit to yield false and misleading results regarding assessments paid by Telluride Resorts between 2009 and mid-2015.  (Ex. A at 3-4 ¶ 7, 32 ¶ 125.)

43.     The Third Amended Complaint alleges that Defendants manipulated the audit process by intentionally withholding material documents and the existence of the true-up process from Burke.  (Ex. A at 3-4 ¶ 7, 32 ¶ 125.)

44.     The Third Amended Complaint alleges that, due to Defendants' conduct, Burke produced an audit report concluding that Telluride Resorts failed to pay assessments to the POA between 2009 and 2015, and that Telluride Resorts likely committed "fraud" as a result (the "Burke Conclusions").  (Ex. A at 3-4 ¶ 7, 32-33 ¶¶ 126-27.)

45.     The Third Amended Complaint alleges Defendants knew the Burke Conclusions were false, misleading, and unreliable because the Burke Conclusions did not account for or consider Telluride Resort's payment of assessments using the true-up process between 2009 and 2015.  (Ex. A at 33 ¶ 128.)

46.     The Third Amended Complaint alleges Defendants authorized and facilitated the circulation of the Burke Conclusions to all of the POA's members in early 2019, despite Defendants' knowledge that the report was false and misleading. (Ex. A at 33 ¶ 129.)

47.     The Third Amended Complaint alleges that in November 2018, and separate from the internal audit, Defendants engaged Haynie & Company, P.C. ("Haynie") to perform an "agreed-upon procedures" evaluation of Telluride Resorts' payment of assessments between 2009 and 2015.  (Ex. A at 4 ¶ 8.)

48.     The Third Amended Complaint alleges that Defendants manipulated the procedures performed by Haynie to ensure Haynie's work would yield false and misleading results regarding Telluride Resorts' payment of assessments.  (Ex. A at 4 ¶ 8.)

49.     The Third Amended Complaint alleges Defendants intentionally limited the scope of Haynie's work to identifying assessments paid by Telluride Resorts directly into the POA's bank account, despite Defendants' knowledge that Telluride Resorts satisfied its assessment obligations through the true-up process, which did not appear on bank statements.  (Ex. A at 4 ¶ 8.)

50.    The Third Amended Complaint alleges that Defendants knew that the bank statements selected to serve as the basis for Haynie's "agreed-upon procedures" review did not demonstrate that Telluride Resorts satisfied its assessment obligations through the true-up process. (Ex. A at 4 ¶ 8.)

51.    The Third Amended Complaint alleges Haynie's February 2019 report of its findings identified no assessments paid by Telluride Resorts directly into the POA's bank accounts. (Ex. A at 4-5 ¶ 9.)

52.    The Third Amended Complaint alleges Defendants knew Haynie's report that Telluride Resorts paid no assessments between 2009 and 2015 was false and misleading because Defendants limited Haynie's work to reviewing bank statements despite knowing that Telluride Resorts paid assessments through the true-up process rather than by depositing money directly into the POA's bank account. (Ex. A at 35-36 ¶ 139.)

53.    The Third Amended Complaint alleges that, while the Underlying Plaintiffs were members of the POA and Herrick held a seat on the POA's board of directors, Defendants failed to disclose information regarding the internal audit and Haynie's purposefully narrow "agreed-upon procedures" engagement to the Underlying Plaintiffs. (Ex. A at 5 ¶ 10.)

54.    The Third Amended Complaint alleges that on March 21, 2019, Defendants circulated to 28 parties a debt collection letter stating the Underlying Plaintiffs owed Defendants in excess of $15.5 million in unpaid assessments for the 2010 to 2015 period (the "Debt Collection Letter"). (Ex. A at 5 ¶ 10.) The Debt Collection Letter allegedly did not disclose Telluride Resorts' assessment payments through the true-up process approved by the POA and Brunjes. (Ex. A at 5 ¶ 10.)

55.     The Third Amended Complaint alleges Defendants circulated the Debt Collection Letter despite knowing the letter contained false and misleading statements.  (Ex. A at 5-6 ¶ 11.)

56.     The Third Amended Complaint expressly alleges that Defendants "widely circulate[d] the Debt Collection Letter to numerous third parties in order to maximize [the] pressure on [the Underlying Plaintiffs] to extort a payment."  (Ex. A at 6-7 ¶ 13.)

57.     By letter dated September 21, 2020, New Hampshire agreed to defend Defendants in the Underlying Lawsuit, subject to a reservation of certain of New Hampshire's rights and defenses under the New Hampshire Policies.

58.     New Hampshire's September 21, 2020 letter states:

> While we have concluded that no defense coverage is owed, we will provide TSG a defense subject to a full reservation of rights, **including the right to withdraw the defense, the right to seek reimbursement for all expenses incurred in your defense, and the right to seek declaratory relief.** (*emphasis in original*)

### COUNT I – DECLARATORY JUDGMENT
**(No Damages Sought Because of Bodily Injury or Property Damage)**

59.     New Hampshire and National Union repeat and reincorporate here the allegations in paragraphs 1 through 58 above.

60.     The New Hampshire Policies and National Union Policies provide coverage for those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage."

61.     The Third Amended Complaint seeks damages due to Defendants' conduct intended to harm the Underlying Plaintiffs' financial interests by the knowing and intentional publication of false and misleading information.  (*See, e.g.*, Ex. A at 33 ¶ 129, 44 ¶ 172.)

62.     The Third Amended Complaint does not seek damages because of "bodily injury" or "property damage," as the New Hampshire Policies and the National Union Policies define those terms.

63.     Accordingly, New Hampshire and National Union owe no duty to defend or indemnify Defendants under the "bodily injury" or "property damage" coverage of the New Hampshire Policies and the National Union Policies.

WHEREFORE, New Hampshire and National Union respectfully request that the Court enter an order:

(a)     Declaring that New Hampshire and National Union owe no duty to defend Defendants in the Underlying Lawsuit under the "bodily injury" or "property damage" coverage of the New Hampshire Policies and the National Union Policies;

(b)     Declaring that New Hampshire and National Union owe no duty to indemnify Defendants for any award of damages or settlement in the Underlying Lawsuit under the "bodily injury" or "property damage" coverage of the New Hampshire Policies and the National Union Policies; and

(c)     Granting such other relief as the Court deems just and proper.

## COUNT II – DECLARATORY JUDGMENT
### (No Bodily Injury Or Property Damage Caused By An Occurrence)

64.     New Hampshire and National Union repeat and reincorporate here the allegations in paragraphs 1 through 63 above.

65.     The New Hampshire Policies and National Union Policies provide coverage for those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence."

66.     The Third Amended Complaint alleges Defendants engaged in a series of deliberate acts intended to harm the Underlying Plaintiffs.  (*See, e.g.*, Ex. A at 2 ¶ 2, 3-4 ¶ 7, 33 ¶ 129, 44 ¶ 172.)

67.     Defendants do not face liability for damages for "bodily injury" or "property damage" caused by an "occurrence," as defined in the New Hampshire and National Union Policies.

68.     Accordingly, New Hampshire and National Union owe no duty to defend or indemnify Defendants under the "bodily injury" or "property damage" coverage of the New Hampshire Policies and the National Union Policies, because any such "bodily injury" or "property damage" was not caused by an "occurrence."

WHEREFORE, New Hampshire and National Union respectfully request that the Court enter an order:

(a)     Declaring that New Hampshire and National Union owe no duty to defend Defendants in the Underlying Lawsuit under the "bodily injury" or "property damage" coverage of the New Hampshire Policies and the National Union Policies;

(b)     Declaring that New Hampshire and National Union owe no duty to indemnify Defendants for any award of damages or settlement in the Underlying Lawsuit under the "bodily injury" or "property damage" coverage of the New Hampshire Policies and the National Union Policies; and

(c)     Granting such other relief as the Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT
### (Expected or Intended Injury Exclusions)

69.     New Hampshire and National Union repeat and reincorporate here the allegations in paragraphs 1 through 68 above.

70.     The New Hampshire Policies and the National Union Policies include an expected or intended injury exclusion, which precludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

71.     The Third Amended Complaint alleges Defendants engaged in conduct intended to harm the Underlying Plaintiffs' financial interests.  (*See, e.g.*, Ex. A at 3-4 ¶¶ 7-8, ¶ 13; Ex. A at 56-57, ¶ 227.)

72.     The New Hampshire Policies' and National Union Policies' expected or intended injury exclusions preclude "bodily injury" or "property damage" coverage for the claims against Defendants in the Underlying Lawsuit.

73.     Accordingly, New Hampshire and National Union owe no duty to defend or potentially indemnify Defendants under the "bodily injury" or "property damage" coverage of the New Hampshire Policies and the National Union Policies.

WHEREFORE, New Hampshire and National Union respectfully request that the Court enter an order:

(a)     Declaring that New Hampshire and National Union owe no duty to defend Defendants in the Underlying Lawsuit under the "bodily injury" or "property damage" coverage of the New Hampshire Policies and the National Union Policies;

(b)     Declaring that New Hampshire and National Union owe no duty to indemnify Defendants for any award of damages or settlement in the Underlying Lawsuit under the "bodily injury" or "property damage" coverage of the New Hampshire Policies and the National Union Policies; and

(c)     Granting such other relief as the Court deems just and proper.

## COUNT IV – DECLARATORY JUDGMENT
### (Knowing Violation of Rights of Another Exclusions)

74.     New Hampshire and National Union repeat and reincorporate here the allegations in paragraphs 1 through 73 above.

75.     The New Hampshire Policies provide coverage for those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury."

76.     The National Union Policies provide coverage for those sums the insured becomes legally obligated to pay as damages because of "personal injury and advertising injury" to which the insurance applies.

77.     The New Hampshire Policies define "personal and advertising injury" and the National Union Policies define "personal injury and advertising injury" as injury arising out of one or more of the following offenses: (a) false arrest, detention, or imprisonment; (b) malicious prosecution; (c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (e) oral or written publication, in any manner, of material that violates a person's right of privacy; (f) the use of another's advertising idea in your "advertisement"; or (g) infringing upon another's copyright, trade dress or slogan in your "advertisement."

78.     The Third Amended Complaint does not allege (a) false arrest, detention, or imprisonment; (b) malicious prosecution; (c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (e) oral or written publication, in any manner, of material that violates a person's right of privacy; (f) the use of another's advertising idea in your "advertisement"; or (g) infringing upon another's copyright, trade dress or slogan in your "advertisement."

79.     The New Hampshire Policies and National Union Policies include a knowing violation of rights of another exclusion, which precludes coverage for, respectively, "personal and advertising injury" and "personal injury and advertising injury" caused by or at the direction of

the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury" or "personal injury and advertising injury."

80.     The Third Amended Complaint alleges that Defendants circulated the Burke Conclusions to all members of the POA despite Defendants' knowledge that the Burke Conclusions were false and misleading.  (Ex. A at 33 ¶ 129.)

81.     The Third Amended Complaint alleges that Defendants circulated the Debt Collection Letter despite Defendants' knowledge that it contained false and misleading information.  (Ex. A at 44 ¶ 172.)

82.     The Third Amended Complaint alleges Defendants engaged in conduct intended to harm the Underlying Plaintiffs' financial interests by knowing and intentional publication of false and misleading information.

83.     Accordingly, New Hampshire and National Union owe no duty to defend or indemnify Defendants under the "personal and advertising injury" and "personal injury and advertising injury" coverages of the New Hampshire Policies and the National Union Policies, respectively, in light of the knowing violation of rights of another exclusions.

WHEREFORE, New Hampshire and National Union respectfully request that the Court enter an order:

(a)     Declaring that New Hampshire and National Union owe no duty to defend Defendants in the Underlying Lawsuit under the "personal and advertising injury" and "personal injury and advertising injury" coverages of the New Hampshire Policies and the National Union Policies, respectively;

(b)     Declaring that New Hampshire and National Union owe no duty to indemnify Defendants for any award of damages or settlement in the Underlying Lawsuit under the "personal and advertising injury" and "personal injury and advertising injury" coverages of the New Hampshire Policies and the National Union Policies, respectively; and

(c)     Granting such other relief as the Court deems just and proper.

## COUNT V – DECLARATORY JUDGMENT
### (Knowledge of Falsity Exclusions)

84.     New Hampshire and National Union repeat and reincorporate here the allegations in paragraphs 1 through 83 above.

85.     The New Hampshire Policies afford coverage for those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury."

86.     The National Union Policies afford coverage for those sums the insured becomes legally obligated to pay as damages because of "personal injury and advertising injury."

87.     The New Hampshire Policies define "personal and advertising injury" and the National Union Policies define "personal injury and advertising injury" as injury arising out of one or more of the following offenses: (a) false arrest, detention, or imprisonment; (b) malicious prosecution; (c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (e) oral or written publication, in any manner, of material that violates a person's right of privacy; (f) the use of another's advertising idea in your "advertisement"; or (g) infringing upon another's copyright, trade dress or slogan in your "advertisement."

88.     The Third Amended Complaint does not allege (a) false arrest, detention, or imprisonment; (b) malicious prosecution; (c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (e) oral or written publication, in any manner, of material that violates a person's right of privacy; (f) the use of another's advertising

idea in your "advertisement"; or (g) infringing upon another's copyright, trade dress or slogan in your "advertisement."

89.    The New Hampshire Policies and National Union Policies include a knowledge of falsity exclusion, which precludes coverage, respectively, for "personal and advertising injury" and "personal injury and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

90.    The Third Amended Complaint alleges that Defendants circulated the Burke Conclusions to all members of the POA despite Defendants' knowledge that the Burke Conclusions were false and misleading.  (Ex. A at 33 ¶ 129.)

91.    The Third Amended Complaint alleges that Defendants circulated the Debt Collection Letter despite Defendants' knowledge that it contained false and misleading information.  (Ex. A at 44 ¶ 172.)

92.    The Third Amended Complaint alleges Defendants engaged in conduct intended to harm the Underlying Plaintiffs' financial interests by knowing and intentional publication of false and misleading information.

93.    Accordingly, New Hampshire and National Union owe no duty to defend or indemnify Defendants under the "personal and advertising injury" and "personal injury and advertising injury" coverages of the New Hampshire Policies and the National Union Policies, respectively, in light of the knowledge of falsity exclusions.

WHEREFORE, New Hampshire and National Union respectfully request that the Court enter an order:

(a)    Declaring that New Hampshire and National Union owe no duty to defend Defendants in the Underlying Lawsuit under the "personal and advertising injury"

and "personal injury and advertising injury" coverages of the New Hampshire Policies and the National Union Policies, respectively;

(b)  Declaring that New Hampshire and National Union owe no duty to indemnify Defendants for any award of damages or settlement in the Underlying Lawsuit under the "personal and advertising injury" and "personal injury and advertising injury" coverages of the New Hampshire Policies and the National Union Policies, respectively; and

(c)  Granting such other relief as the Court deems just and proper.

## <u>COUNT VI – REIMBURSEMENT</u>
### <u>(By New Hampshire For Defense Cost Reimbursement)</u>

94.  New Hampshire repeats and reincorporates here the allegations in paragraphs 1 through 93 above.

95.  New Hampshire paid attorneys' fees, costs, and other expenses in connection with the defense of Defendants in the Underlying Lawsuit.

96.  New Hampshire reserved by letter the right to obtain reimbursement of all expenses incurred in defense of the Defendants in the Underlying Lawsuit.

97.  New Hampshire owed no duty under the New Hampshire Policies to afford a defense to Defendants in the Underlying Lawsuit.  Because the Underlying Lawsuit does not seek damages because of "bodily injury" or "property damage" caused by an "occurrence," or damages sought against Defendants in the Underlying Lawsuit are otherwise excluded from coverage by New Hampshire Policies' Expected or Intended Injury, Knowing Violation of Rights of Another, and/or Knowledge of Falsity exclusions, as set forth in Counts I-V of this Complaint, there is no potential for coverage for the Underlying Lawsuit under the New Hampshire Policies. Accordingly, New Hampshire paid, and Defendants received the benefit of, attorneys' fees, costs, and other expenses that New Hampshire owed no obligation to pay and Defendants had no right to receive.

98.     New Hampshire has an equitable right to reimbursement of all attorneys' fees, costs, and other expenses it paid for Defendants' defense in the Underlying Lawsuit.

WHEREFORE, New Hampshire respectfully requests the following relief:

(a)     A judgment that New Hampshire is entitled to reimbursement from Defendants for amounts New Hampshire paid to defend Defendants in the Underlying Lawsuit, together with interest at the legal rate from the date of payment; and

(b)     Granting such other relief as the Court deems just and proper.

Dated: July 9, 2021                         Respectfully submitted,

                                            NEW HAMPSHIRE INSURANCE COMPANY
                                            and NATIONAL UNION FIRE INSURANCE
                                            COMPANY OF PITTSBURGH, PA.


                                   By:      _____/s/ Ian A. Cooper_____
                                            Matthew J. Fink
                                            Ian A. Cooper
                                            David J. Rock
                                            NICOLAIDES FINK THORPE
                                            MICHAELIDES SULLIVAN LLP
                                            10 South Wacker Drive, 21st Floor
                                            Chicago, IL 60606
                                            Telephone: (312) 585-1400
                                            mfink@nicolaidesllp.com
                                            icooper@nicolaidesllp.com
                                            drock@nicolaidesllp.com