**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01873-CMA-NRN

NEW HAMPSHIRE INSURANCE COMPANY
and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

                Plaintiffs,

v.

TSG SKI & GOLF LLC, THE PEAKS
OWNERS ASSOCIATION, INC., PEAKS
HOTEL LLC, and H. CURTIS BRUNJES,

                Defendants; and

TSG SKI & GOLF, LLC; THE PEAKS
OWNERS ASSOCIATION, INC.; PEAKS
HOTEL LLC; and H. CURTIS BRUNJES,

                Counter-Plaintiffs,

v.

NEW HAMPSHIRE INSURANCE COMPANY
and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

                Counter-Defendants.

---

**NEW HAMPSHIRE INSURANCE COMPANY AND**
**NATIONAL UNION FIRE INSURANCE COMPANY OF**
**PITTSBURGH, PA.'S MOTION FOR SUMMARY JUDGMENT**

---

New Hampshire Insurance Company ("New Hampshire") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") (collectively "Plaintiffs"), by and through their attorneys NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP, for their Motion for Summary Judgment, state as follows:

**INTRODUCTION**

This insurance coverage dispute arises out of an underlying lawsuit relating to defendants issuing a debt collection letter demanding money for owners' association assessments from underlying plaintiffs that defendants knew was not owed. Each successive complaint filed against defendants in that underlying lawsuit sought damages for defendants' intentional publication of false information in the letter. Consistent with those allegations, now-irrefutable evidence at trial in the underlying case established that defendants knew the information published in the letter was false.

As set forth below, New Hampshire and National Union do not owe insurance coverage for the defendants relative to the underlying case. Although insurance policies issued by New Hampshire and National Union provide coverage for certain damages because of "personal and advertising injury," which includes liability for written publication of material that libels a person or organization, the policies exclude coverage for any such damages that are the result of a false statement published at the insured's direction with knowledge of its falsity. Here, each complaint in the underlying litigation alleged, and the trial testimony confirmed, that defendants knowingly published false information in the debt collection letter, and the false information was the basis for defendants' liability in the underlying lawsuit.  Accordingly, New Hampshire and National Union owe no duty to defend or indemnify defendants in connection with the underlying lawsuit.

**FACTUAL BACKGROUND**

**A.    Defendants Allegedly Issued The Debt Collection Letter Knowing It Contained A False Statement**

Peaks Capital Partners, LLC; Telluride Resort & Spa, LLC ("TRS"); Highlands Resorts at the Peaks; Edward D. Herrick ("Ted Herrick"); and Edward D. Herrick, Jr.

2

("Todd Herrick") (collectively, the "Underlying Plaintiffs") filed a First, Second, Third, Fourth, and Fifth Amended Complaint[1] (the "Complaints") in the lawsuit captioned *Peaks Capital Partners, LLC et al. v. H. Curtis Brunjes et al.*, Case No. 2019CV30047, pending in the Colorado District Court, County of San Miguel (the "Underlying Lawsuit"). (Docs. 77-1, 77-2, 77-3, 77-4, and 77-5.) Each of the Complaints alleged a deliberate scheme by TSG Ski & Golf, LLC ("TSG"), Peaks Hotel LLC ("Peaks Hotel"), the Peaks Owners Association, Inc. (the "POA"), and H. Curtis Brunjes ("Brunjes") (collectively "Defendants") to cause financial harm to Underlying Plaintiffs by coercing them to pay owners' association assessments they did not owe. (Docs. 77-1 at ¶ 1; 77-2 at ¶ 1; 77-3 at ¶ 1; 77-4 at ¶ 1; 77-5 at ¶ 1.) The Complaints allege Defendants circulated a debt collection letter (the "Debt Collection Letter") in March 2019 stating that Underlying Plaintiffs owed Defendants more than $15.5 million in unpaid assessments, as the final, critical phase of their scheme. (Docs. 77-1 at ¶ 10; 77-2 at ¶ 10; 77-3 at ¶ 11; 77-4 at ¶ 11; 77-5 at ¶ 11.)

The Complaints allege TRS paid assessments imposed by the POA for condominiums owned at The Peaks in Mountain Village, Colorado using an agreed-upon "true-up" process. (Docs. 77-1 at ¶¶ 2-3; 77-2 at ¶¶ 2-3; 77-3 at ¶¶ 2-3; 77-4 at ¶¶ 2-3; 77-5 at ¶¶ 2-3.) The "true-up" process involved deducting TRS's expense payments from TRS's assessments due, and TRS would pay the balance of its assessments, less its expense payments. (Docs. 77-1 at ¶¶ 3, 43-45; 77-2 at ¶¶ 3, 44-46; 77-3 at ¶¶ 3, 46-48; 77-4 at ¶¶ 3, 46-48; 77-5 at ¶¶ 45-47.) The Complaints allege Defendants knew TRS satisfied its assessment obligations by paying expenses and using the true-up process. (Docs. 77-1 at ¶ 5; 77-2 at ¶ 5; 77-3 at ¶ 6; 77-4 at ¶ 6; 77-5 at ¶ 6.)

---

[1] Peaks Capital Partners, LLC and Highlands Resorts at the Peaks were not named plaintiffs with respect to the Fifth Amended Complaint. (Doc. 77-5.)

The Complaints alleged Defendants implemented a scheme to coerce the Underlying Plaintiffs to pay amounts they did not owe by commissioning a sham "internal audit." (Docs. 77-1 at ¶ 6; 77-2 at ¶ 6; 77-3 at ¶ 7; 77-4 at ¶ 7; 77-5 at ¶ 7.) The Complaints claimed that Defendants intentionally manipulated the "internal audit" to produce false and misleading results regarding assessments TRS paid. (*Id.*) The Complaints alleged Defendants knew the results of the "internal audit" were misleading because it did not account for true-up process payments. (Docs. 77-1 at ¶¶ 112-115; 77-2 at ¶¶ 115-118; 77-3 at ¶¶ 125-128; 77-4 at ¶¶ 125-128; 77-5 at ¶¶ 123-126.)

Separately, Defendants retained an accounting firm to perform an "agreed-upon procedures" evaluation of assessments TRS paid. (Docs. 77-1 at ¶ 7; 77-2 at ¶ 7; 77-3 at ¶ 8; 77-4 at ¶ 8; 77-5 at ¶ 8.) The Complaints alleged Defendants intentionally manipulated the accounting procedures to ensure they would yield false and misleading results regarding TRS's assessment payments. (*Id.*) To accomplish this, Defendants intentionally limited the scope of the accountant's work to identifying assessments TRS paid directly into the POA's bank account. (*Id.*) Consequently, the accountant did not find any assessments TRS paid into the POA's bank accounts. (Docs. 77-1 at ¶ 8; 77-2 at ¶ 8; 77-3 at ¶ 9; 77-4 at ¶ 9; 77-5 at ¶ 9.) Defendants allegedly knew the accountant's finding was false and misleading because TRS paid assessments through the true-up process. (Docs. 77-1 at ¶ 125; 77-2 at ¶ 129; 77-3 at ¶ 139; 77-4 at ¶ 148; 77-5 at ¶ 141.)

To pressure Underlying Plaintiffs to make payments that were not owed, Defendants circulated the Debt Collection Letter that stated Underlying Plaintiffs owed Defendants more than $15.5 million in unpaid assessments. (Docs. 77-1 at ¶¶ 10, 12; 77-2 at ¶¶ 10, 12; 77-3 at ¶¶ 11, 13; 77-4 at ¶¶ 11, 13; 77-5 at ¶¶ 11, 13.) The letter did not

disclose payments were made through the true-up process. (*Id.*) The Complaints allege the Debt Collection Letter was circulated despite Defendants' knowledge that the Debt Collection Letter contained false information. (*Id.*) The Complaints allege Defendants intentionally circulated the false and misleading statements in the Debt Collection Letter to third parties to extort a payment from the Underlying Plaintiffs. (Docs. 77-1 at ¶ 11-12; 77-2 at ¶ 11-12; 77-3 at ¶ 12-13; 77-4 at ¶ 12-13; 77-5 at ¶ 12-13.)

In the Complaints, Underlying Plaintiffs allege the publication of the false and misleading statement in the Debt Collection Letter caused their damages. (*See e.g.,* Docs. 77-1 at ¶ 11-12; 77-2 at ¶ 11-12; 77-3 at ¶¶ 12-13; 77-4 at ¶¶ 12-13; 77-5 at ¶¶ 12-13.) The Fourth and Fifth Amended Complaints, filed on the eve of trial, each plead a cause of action for "Negligence" against Defendants. (Docs. 77-4; 77-5.) The claims for "Negligence" incorporate – and are rooted in – the allegations that Defendants knew the material in the Debt Collection Letter was false. (Docs. 77-4 at ¶ 308; 77-5 at ¶ 276.)

## B.   The Evidence At Trial Mirrors The Complaints

On June 6, 2022, trial began in the Underlying Lawsuit. (Doc. 77 at ¶ 64; Doc. 95 at ¶ 14.) Underlying Plaintiffs testified their damages arose out of the publication of the Debt Collection Letter. (Ex. A at 10:20-11:2; 39:4-24; 162:17-163:10.) Evidence confirmed the Debt Collection Letter was published on March 21, 2019. (Ex. B; Ex. C at 155:23-156:10.) The Debt Collection Letter stated: "[T]he following amounts are due and owing: . . . $15,521,747." (Ex. B.) Defendants'[2] testimony confirmed they knew the Debt Collection Letter falsely stated Underlying Plaintiffs owed $15,521,747 because Defendants knew Underlying Plaintiffs had made assessment payments through the true-

---

[2] Peaks Hotel was dismissed as a defendant prior to trial.

up process, which reduced the total amount of assessments owed.

Brunjes was a POA board member who knew about TRS's assessment payments using the true-up process. (Ex. D at 133-134.) He participated in preparing and approving POA budgets, participated in approving TRS true-ups from 2009 to 2015, and voted in favor of including language permitting the use of the true-up process in POA governing documents. (Ex. D at 13:18-14:1; 25:4-23; 71:1-74:25.) Brunjes testified he knew "the total amount due would not be $15 million, that there would be an offset" and admitted that $15 million was not owed. (Ex. D at 269:4-270:5; 274:22-276:5.)

Tom Richards ("Richards") was a POA board member and TSG's CFO when the Debt Collection Letter was published. (Ex. C at 94:20-95:2; Ex. E at 91:22-92:11.) Richards knew about TRS's assessment payments using the true-up process. (Ex. E at 45:24-46:11.) Richards personally possessed true-up documents and took part in approving payments made as part of the true-up process. (Ex. E at 45:24-46:11; 48:9-51:6; 52:17-53:10; 93:8-18.) Richards testified that he knew TRS did not owe $15.5 million because that amount did not account for "a penny" TRS paid through the true-up process. (Ex. E at 150:12-22.) Richards also testified he knew the investigation of TRS's payments was not an "audit" and the POA's engagement of an accountant to perform "agreed-upon procedures" was not a "review." (Ex. E at 123:22-24, 132:2-18, 135:3-6, 138:4-10.)

Bill Jensen ("Jensen") was a POA board member and TSG's CEO. (Ex. C at 87:25-88:12; 100:10-13.) Jensen knew about the true-up process and that TRS paid expenses as part of the true-up process. (Ex. C at 162-163.) He testified other POA directors also knew about the true-up process before March 2019. (Ex. C at 164:7-165:11.) Jensen specifically testified the POA board was "aware that TRS paid some of the expenses of

the POA" before March 2019 and that TRS's "assessments to the POA were paid through a payment of the POA's expenses." (Ex. C at 163:5-164:1; 164:11-165-11.)

The Underlying Plaintiffs testified that the circulation of the Debt Collection Letter caused them financial harm. (Ex. A at 10:20-11:2; 162:17-163:10.) Specifically, Ted Herrick testified the Debt Collection Letter harmed important relationships in Underlying Plaintiffs' business. (Ex. A at 39:4-42:15.)

At the close of trial, the court made findings of undisputed fact that the POA knew the amount stated in the Debt Collection Letter was false. (Ex. F at 243:8-20.) The court denied the POA's Motion for Directed Verdict as to Plaintiffs' claim for Breach of the Colorado Common Interest Ownership Act ("CCIOA"), stating:

> [Y]ou all needed to come up with an amount owed before you put it in a letter, and that didn't happen. **You put in a number that wasn't true**. . . . If you're complying with CCIOA, there has to be a good faith basis for that number, and there certainly, **before you sent out a debt collection letter, needs to be some good faith basis for any number. And so I didn't hear that**, and so I'm certainly not going to direct verdict in your favor on that.

(*Id.*, *emphasis added*.)

On June 17, 2022, the jury entered a verdict against TSG, the POA, and Brunjes, and awarded Underlying Plaintiffs $225,000. (Ex. G; Doc. 77 at ¶ 65; Doc. 95 at ¶ 14.) The jury found the POA liable for breach of fiduciary duty, negligence, civil conspiracy, and for breach of CCIOA. (Ex. G.) The jury found Brunjes liable for breach of fiduciary duty and negligence. (*Id.*) The jury found TSG liable for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, and civil conspiracy. (*Id.*) Also, because the jury found the POA breached the CCIOA, the court found the POA is obligated to pay Underlying Plaintiffs' attorneys' fees. (Ex. H.) As of this filing, the court has not determined

the amount of the attorneys' fee award. (Doc. 77 at ¶ 66; Doc. 95 at ¶ 14.)

**C.     The New Hampshire And National Union Policies Cover Liability For Libel But Not Where The Insured Knew The Statement Was False**

**1.     The New Hampshire Policies**

New Hampshire issued to TSG Company LLC a series of commercial package policies bearing policy nos. 01-LX-011738646-5, 01-LX-011738646-6, and 01-LX-011738646-7, effective for consecutive annual periods from November 1, 2017 to November 1, 2020 (the "New Hampshire Policies"). The New Hampshire Policies are attached as Group Exhibit I. Relevant terms and conditions of the New Hampshire Policies are the same across all three annual periods. (*See* Ex. I.)

The New Hampshire Policies provide the following insuring agreement:

**1.     Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . ..

\*     \*     \*

**b.**     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Ex. I at 296.) The New Hampshire Policies define "personal and advertising injury" as injury arising out of one or more of the following offenses:

\*     \*     \*

**d.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

(Ex. I at 305.)

Critically, the New Hampshire Policies exclude coverage for publication of information an insured knows is false:

This insurance does not apply to:

\*   \*   \*

**b.    Material Published With Knowledge Of Falsity**

> "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

(Ex. I at 296.)

**2.    The National Union Policies**

National Union issued to TSG Company LLC a series of commercial umbrella liability policies bearing policy nos. 29-UD-042864208-5, 29-UD-042864208-6, and 29-UD-042864208-7, effective for consecutive annual periods from November 1, 2017 to November 1, 2020 (the "National Union Policies"). The National Union Policies are attached as Group Exhibit J. Relevant terms and conditions of the National Union Policies are the same across all three annual periods. (*See* Ex. J.)

The National Union Policies provide coverage excess the New Hampshire Policies:

A.    We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of . . . **Personal Injury and Advertising Injury** to which this insurance applies . . ..

The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

B.    This policy applies, only if:

\*   \*   \*

2.    the **Personal Injury and Advertising Injury** is caused by an **Occurrence** that takes place anywhere arising out of your

business, but only if the **Occurrence** was committed during the **Policy Period**.

(Ex. J at 121.) Next, the National Union Policies define **Personal Injury and Advertising Injury** as injury arising out of your business, including consequential **Bodily Injury**, arising out of one or more of the following offenses:

\*     \*     \*

    4.     oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

(Ex. J at 142.)

The National Union Policies likewise exclude coverage for publication of information an insured knows is false:

**U.**    **Various Personal Injury and Advertising Injury**

This insurance does not apply to **Personal Injury and Advertising Injury**:

\*     \*     \*

    **2.**     arising out of oral, written or electronic publication, in any manner, of material if done by or at the direction of any **Insured** with knowledge of its falsity . . . .

(Ex. J at 132.)

**D.**    **New Hampshire Is Defending Defendants Under Reservation Of Rights**

New Hampshire advised Defendants that the Underlying Lawsuit was not a covered claim, but nevertheless agreed to defend Defendants subject to a reservation of New Hampshire's right to seek reimbursement of defense costs. (Ex. K at 2, 10.)

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The construction of insurance policies is a matter of law to be determined

by the court. *Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Cont'l Ins. Co.*, 891 F.2d 772, 774 (10th Cir. 1989).

## **ARGUMENT**

### I.      **The Knowledge Of Falsity Exclusion Bars Coverage For The Underlying Lawsuit[3]**

The Knowledge of Falsity Exclusions in the New Hampshire Policies and National Union Policies preclude both a duty to defend against the Complaints and a duty to indemnify Defendants for the judgment in the Underlying Lawsuit. This exclusion bars coverage for "personal and advertising injury"[4] arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity. (Ex. I at 296; Ex. J at 132.) The Complaints allege Defendants knew the amount stated in the Debt Collection Letter was false. Further, Defendants were held liable based on uncontroverted evidence that they knew the amount stated in the Debt Collection Letter was false. Accordingly, New Hampshire and National Union owed no duty to defend against the Complaints and owe no duty to indemnify Defendants for the judgment.

#### A.      **Publishing The False Debt Collection Letter Is "Personal And Advertising Injury"**

"Personal and advertising injury" means, in relevant part, "oral or written publication, in any manner, of material that slanders or libels a person or organization or

---

[3] Defendants do not seek coverage under the New Hampshire Policies' or National Union Policies' "bodily injury" or "property damage" coverage parts. (Ex. L, May 25, 2022 Letter at 3; Doc. 101.) Defendants' Counterclaims also do not seek a declaration regarding these coverages. (*See* Doc. 95.)

[4] The New Hampshire Policies use the defined term "personal and advertising injury." (Ex. I at 305.) The National Union Policies use the defined term **Personal Injury and Advertising Injury**. (Ex. J at 142.) These terms have substantially similar definitions, so for the Court's convenience, New Hampshire and National Union refer to them jointly as "personal and advertising injury."

disparages a person's or organization's goods, products or services." (Ex. I at 305; Ex. J at 142.) The definition of "personal and advertising injury" requires a "publication." (*Id.*) The Debt Collection Letter is a publication containing a false statement and constitutes material that libels a person or organization. (*See* Ex. B.); *Burns v. McGraw-Hill Broad. Co., Inc.*, 659 P.2d 1351, 1357 (Colo. 1983) (a statement is defamatory if it harms the reputation of another).  A written defamatory statement is "libel." *McGettigan v. Di Mare*, 173 F. Supp. 3d 1114, 1125 (D. Colo. 2016). The Debt Collection Letter falsely states $15,521,747 is "due and owing." (Ex. B.) Underlying Plaintiffs' damages arose from the publication of the Debt Collection Letter to its recipients and the harm the letter caused to Underlying Plaintiffs' business. (Ex. A at 10:20-11:2; 39:4-42:15; 162:17-163:10.)

### B. The Knowledge of Falsity Exclusion Precludes A Duty To Defend Under The New Hampshire and National Union Policies

While only the New Hampshire Policies potentially owe a defense in the Underlying Lawsuit because the **Retained Limit** of the National Union Policies, which are umbrella policies, is not exhausted, Defendants contend both insurers owe a defense obligation. While this is incorrect, the New Hampshire and National Union Policies' Knowledge of Falsity Exclusion forecloses that obligation because Defendants faced liability only for the publication of a dollar amount owed that they knew was false. (Ex. I at 296; Ex. J at 132.)

Whether an insurer owes its insured a defense is a question of law to be determined by comparing the allegations pled in a complaint to the terms of the insurance policy. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo. 2004). The factual allegations in the complaint determine an insurer's duty, not the complaint's legal characterization of those facts or the causes of action alleged. *Gerrity Co., Inc. v. CIGNA Prop. & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo. App. 1993); *Zurich Am. Ins. Co.*

*v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 921 (10th Cir. 2008).

Here, the factual basis for all claims asserted in the Complaints is Defendants' circulation of the Debt Collection Letter. (Docs. 77-1 at ¶¶ 10-11; 77-2 at ¶¶ 10-11; 77-3 at ¶¶ 11-12; 77-4 at ¶¶ 11-12; 77-5 at ¶¶ 11-12.) Specifically, the Complaints allege "at the time [Defendants] published the Debt Collection Letter, they knew that the letter's calculation of allegedly unpaid assessments was false and misleading." (*Id*.) The Complaints further allege Defendants knew the statement regarding unpaid assessments in the Debt Collection Letter was false, and that TRS satisfied its assessment obligations using the true-up process. (Docs. 77-1 at ¶¶ 10-11; 77-2 at ¶¶ 10-11; 77-3 at ¶¶ 162-165; 77-4 at ¶¶ 11-12; 77-5 at ¶¶ 11-12.) Finally, the Complaints allege the Debt Collection Letter was published "knowingly and intentionally," "despite knowing that the statements and positions set forth in the letter were false and misleading." (Docs. 77-1 at ¶¶ 142-143; 77-2 at ¶¶ 146-147; 77-3 at ¶¶ 169-172; 77-4 at ¶¶ 169-172; 77-5 at ¶¶ 158-159.)

In *Thompson v. Maryland Cas. Co.*, the Colorado Supreme Court applied a Knowledge of Falsity Exclusion to preclude a duty to defend. 84 P.3d 496 (Colo. 2004). The underlying complaint in *Thompson* alleged the insured sent a letter claiming a right of first refusal on certain property. *Id.* at 500. The underlying complaint alleged the statement claiming a right of first refusal existed was "false." *Id.* The complaint further alleged that the insured's actions were "intentional" and "attended by circumstances of fraud." *Id.* The *Thompson* court held that the insurance policy's knowledge of falsity exclusion applied to preclude coverage. *Id.* at 508.

Like *Thompson,* federal courts in Colorado and elsewhere apply the Knowledge of Falsity Exclusion to bar coverage where an underlying complaint alleges the insured knew

that statements made were false. *See e.g., Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640 (7th Cir. 2007) (where statutory claims were pled, but "the allegations against [the insured were] not grounded in any theory of relief except fraud," the exclusion applied); *Callas Enters. Inc. v. Travelers Indem. Co. of Am.*, 193 F.3d 952 (8th Cir. 1999) (where the underlying plaintiff alleged the insured knowingly made defamatory statements, the "knowledge of falsity" exclusion precluded coverage); *Aim High!, Inc. v. Hartford Fire Ins. Co.*, No. 09-CV-02542-REB-MJW, 2010 WL 4977850, *2, *7 (D. Colo. Dec. 2, 2010) (where the complaint in the underlying lawsuit included "repeated allegations" that the insureds knew the facts but repeatedly and knowingly made false statements about the facts to others, the "knowledge of falsity" exclusion barred coverage). Even if a cause of action pled does not require proof of knowledge of falsity, if allegations state the insured knew statements were false, the exclusion precludes a duty to defend. *Aim High!*, 2010 WL 4977850 at *5, citing *Thompson*, 84 P.3d at 508. In *Aim High!*, the court's opinion cited to nineteen paragraphs detailing the plaintiffs' references to "knowingly [making] false statements." 2010 WL 4977850 at *5.

Here, as in *Thompson* and *Aim High!*, the Complaints contain specific allegations that Defendants knowingly made false statements in the Debt Collection Letter. For example, paragraphs 12, 14, 143-161, 192, 213, 214, 218, 220, 221, 229, 231, 236, 241, 255, 261, and 267 of the Fifth Amended Complaint allege knowingly false statements. (*See* Doc. 77-5.[5]) The allegations that Defendants issued the Debt Collection Letter knowing that it falsely claimed an incorrect amount of assessments squarely implicates

---

[5] All Complaints contain substantially similar allegations. The Fifth Amended Complaint is used here as an example.

the Knowledge of Falsity Exclusion and relieves New Hampshire and National Union of any obligation to defend Defendants in the Underlying Lawsuit.

### C.   The Knowledge Of Falsity Exclusion Precludes Coverage For The Jury's Award

Defendants were held liable following trial for their issuing the Debt Collection Letter. There are no other publications that culminated in Defendants' liability. A court evaluating the duty to indemnify must "look to *the facts as they developed at trial and the ultimate judgment.*" *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003) (*emphasis added*).[6] Evidence admitted at trial, not the legal requirements of claims pled by the Underlying Plaintiffs, is the basis for the court's evaluation of New Hampshire and National Union's indemnity obligation. Evidence not presented at trial in the underlying lawsuit is inadmissible in litigation to determine insurance coverage. *Clarendon Nat'l Ins. Co. v. Brooktree Vill. Homeowners Ass'n.*, No. 19-cv-02324-KMT, 2020 WL 5134537, *2 (D. Colo. August 31, 2020). The Knowledge of Falsity Exclusion bars coverage if the insured knows the statement forming the basis of the plaintiff's claim is false. *Thompson*, 84 P.3d at 507-508.

Evidence of Defendants' knowledge that the Debt Collection Letter contained a false statement was uncontroverted at trial. Defendants themselves testified they knew the Underlying Plaintiffs did not owe $15.5 million when the Debt Collection Letter was issued. Brunjes', Richards', and Jensen's testimony confirms Defendants knew the $15.5 million claim in the Debt Collection Letter was false. (*See* Ex. C at 162-163, 164:7-165:11; Ex. D at 252:20-253:16;

---

[6] Defendants' Counterclaims contend that New Hampshire and National Union owe indemnity for the judgment and fee award because the verdict finding Defendants liable for "negligence" and the POA liable for "breach of the CCIOA" did not require a determination that the Defendants knew statements in the Debt Collection Letter were false. (*See* Doc. 95.) Defendants' theory is inconsistent with Colorado law.

269:4-270:5;  274:22-276:5;  Ex.  E  at  45:24-46:11,  48:14-49:2,  52:17-53:10;  93:8-18, 150:12-152:3.) Brunjes testified he knew $15.5 million was not "due and owing" and that the POA knew there would be an offset for true-up expenses. (Ex. D at 269:21-270:20, 276:2-5.) Richards testified he had access to true-up information and approved true-up payments,  yet  intentionally  issued  the  Debt  Collection  Letter  without  accounting  for assessments  satisfied  by  the  true-up  process.  (Ex.  E  at  45:24-46:11,  52:17-53:10, 150:12-152:3.)  Jensen  testified  he  and  other  POA  directors  knew  TRS  paid  its assessments by the true-up process. (Ex. C at 162:10-164:17.)

The acts and knowledge of an agent are imputed to the principal. *In re Stat-Tech Sec. Litig.*,  905 F. Supp. 1416, 1422 (D. Colo. 1995).  Because  a  corporation  can  only  act through its agents, the actions of corporate officers and directors are attributable to the corporate entity. *Id.* The agent's knowledge is the principal's knowledge when the agent acts within his or her scope of authority. *Weghorst v. Cnty. Fire Ins. Co. of Philadelphia*, 96 Colo. 564, 570 (1935). Brunjes was a POA board member. (Ex. D at 132:3-13.) Richards was a POA board member and TSG's CFO. (Ex. E at 21:14-25; 91:18-92:11.) Jensen was a POA board  member  and  TSG's  CEO.  (Ex.  C  at  87:25-88:12;  100:10-13.)  Accordingly,  Brunjes's, Richards's, and Jensen's knowledge is imputed to the POA, and Richards's and Jensen's knowledge is imputed to TSG.

Significantly,  the  underlying  court  made  a  finding  of  undisputed  fact  that Defendants knew the amount stated as "due and owing" in the Debt Collection Letter was false. (Ex. F at 243:8-20.) The POA and TSG testified at trial, through Brunjes, Richards, and Jensen, that they knew TRS paid assessments using the true-up process and the Debt Collection Letter did not account for *any* true-ups. (*See inter alia*, Ex. C at 162-163,

16

164:7-165:11 (<u>Jensen</u>); Ex. D at 133-134, 252:20-253:16; 269:4-270:5; 274:22-276:5 (<u>Brunjes</u>); Ex. E at 45:24-46:11, 48:14-49:2, 52:17-53:10, 93:8-18, 123:22-24, 132:1-18, 135:3-6, 138:4-10, 144:23-145:4, 150:12-22 (<u>Richards</u>).) Therefore, the POA, TSG, and Brunjes each knew the amount stated in the Debt Collection Letter was false. Thus, the Knowledge of Falsity Exclusion precludes coverage for the judgment and fee award.

## II.    The Attorneys' Fee Award Falls Outside Of Coverage And, Alternatively, Is Not An Award Of Damages

The Knowledge of Falsity Exclusion precludes coverage for damages awarded against the Defendants, including for the POA's breach of the CCIOA. (*See* Ex. G.) The court awarded attorneys' fees based on the POA's breach of the CCIOA. (Ex. H.) Because the Knowledge of Falsity Exclusion bars coverage for the jury's award, the fee award (which was based on the POA's issuance of the Debt Collection Letter) is not covered. *Bd. of Cty. Com'rs of Larimer Cty., Colo v. Guarantee Ins. Co.*, 90 F.R.D 405, 407 (no coverage for attorneys' fee award where policy afforded no coverage for judgment).

Further, while the Knowledge of Falsity Exclusion bars coverage for the court's award of attorneys' fees against POA, the fee award also expressly falls outside coverage afforded by the New Hampshire and National Union Policies.  Specifically, with respect to any suit against an insured that it defends, New Hampshire will pay "court costs taxed against the insured," but those payments do not include "attorneys' fees or attorneys' expenses taxed against the insured." (Ex. I at 298.) This language is unambiguous and courts interpret it to preclude coverage for attorneys' fee awards. *See Essex Ins. Co. v. Do It All Inv. Grp., Inc.*, No. 1:11-cv-03120-JOF, 2012 WL 13009098, *7 (N.D. Ga. Sept. 21, 2012) (language is unambiguous and no coverage available for attorneys' fee award); *FIE, LLC v. New Jax Condo Ass'n, Inc.*, 2016-0843 (La. App. 4 Cir. 2/21/18), 241 So.3d

372, 398 (no coverage for attorneys' fees award where "the . . . policy clearly states there is no coverage for attorney's fees taxed against the insured").

Separately, the National Union Policies cover "court costs taxed against the **Insured**" only where National Union assumes the defense of a **Suit** against the **Insured** that seeks damages covered by the National Union Policies. (Ex. J at 123.) Only New Hampshire agreed to defend Defendants in the Underlying Lawsuit. (Ex. K at 2, 10.) National Union had no obligation to assume the defense of the POA because the policies' **Retained Limit** is not exhausted and, for the reasons stated in Section I, the Knowledge of Falsity Exclusion bars coverage under the National Union Policies.

Further, the attorneys' fees and expenses awarded are not "damages" and therefore do not fall within the scope of the New Hampshire Policies' or National Union Policies' insuring agreements. The insuring agreements provide coverage only for "damages." (Ex. I at 296; Ex. J at 121.) CCIOA shifts attorneys' fees to the prevailing party, like a fee-shifting agreement in a contract. Colo. Rev. Stat. § 38-33.3-123(1)(c). Courts have found that attorneys' fee awards arising out of fee-shifting agreements constitute "costs" rather than "damages." *Peerless Indem. Ins. Co. v. Colclasure*, Civil Action No. 16-cv-424-WJM-CBS, 2017 WL 633046, *10 (D. Colo. Feb. 16, 2017).

Finally, the attorneys' fees award in the Underlying Lawsuit was adjudicated after the trial by the court pursuant to Colorado procedural rules related to the award of costs, rather than during the "damages phase" of the trial. *Roa v. Miller*, 784 P.2d 826 (Colo. App. 1989). For this additional reason, the attorneys' fees awarded constitute "costs" rather than covered "damages."

For these separate and independent reasons, New Hampshire and National Union

owe no obligation to indemnify the POA for the award of attorneys' fees.

### III.   New Hampshire is Entitled to Recoup Its Defense Costs

Colorado law allows an insurer to recover amounts it pays as defense costs where claims are determined to fall outside of coverage. *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1092 (10th Cir. 2010). *Id.* Colorado courts encourage insurers to provide a defense to the insured under a reservation of rights to seek reimbursement and to file a declaratory judgment action regarding whether they owe a defense obligation. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991); *see also Globe Indem. Co. v. Travelers Indem. Co. of Illinois*, 98 P.3d 971 (Colo. App. 2004) (reimbursement of defense fees granted to insurers that did not owe defense). New Hampshire is entitled to recoup its defense costs because it owed no duty to defend Defendants in the Underlying Lawsuit and properly reserved its right to seek reimbursement of defense costs. (*See* Doc. 77 at ¶ 1; Ex. K at 2, 10.)

### IV.   New Hampshire and National Union Are Entitled To Summary Judgment on Counts II and III Of Defendants' Counterclaims

New Hampshire and National Union are entitled to judgment on Counts II and III of Defendants' Counterclaims as a matter of law. Counts II and III of Defendants' Counterclaims allege breach of the common law duty of good faith and fair dealing and statutory claims for unreasonable delay or denial of insurance benefits. (*See* Doc. 95.) Absent insurance coverage, an insurer cannot breach its duties of good faith and fair dealing. *The Marianist Province of the United States, Inc. v. ACE USA*, No. 08-cv-01760-WYD-MEH, 2010 WL 2681760, *2 (D. Colo. July 2, 2010); *Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996) (insurer may not be liable for breach of a duty which it did not owe in the first instance); *see also* Colo. Rev. Stat. § 10-3-1115 (an insurer may not

unreasonably delay or deny payment of a claim <u>for benefits owed</u>). Once a court concludes an insurance company's denial of coverage was proper, all bad faith claims must fail. *Lodge at Mountain Village Owner Association, Inc. v. Eighteen Certain Underwriters of Lloyd's of London*, No. 20-cv-00380-CMA-SKC, 2022 WL 824435, *9 (D. Colo. Mar. 18, 2022). Here, New Hampshire and National Union owe no duty to defend or indemnify Defendants. Therefore, there is no genuine issue of material fact and New Hampshire and National Union are entitled to judgment as a matter of law on Counts II and III of Defendants' Counterclaims.

## **CONCLUSION**

Damages awarded for Defendants' knowing publication of false material are expressly excluded under the New Hampshire and National Union Policies. New Hampshire and National Union are entitled to judgment as a matter of law that they owe no duty to defend or indemnify Defendants in the Underlying Lawsuit. Because there is no duty to defend or indemnify Defendants, New Hampshire and National Union are entitled to summary judgment on Defendants' Counterclaims. Finally, New Hampshire is entitled to recoup defense fees and costs paid to date.

WHEREFORE, Plaintiffs respectfully request the following relief:

(a)  A declaration that Plaintiffs owe no duty to defend or indemnify Defendants in the Underlying Lawsuit;

(b)  Judgment in favor of Plaintiffs on Defendants' Counterclaims;

(c)  Judgment that Defendants must reimburse amounts New Hampshire paid to defend against the Underlying Lawsuit, plus interest; and

(d)  Any other relief that this Court deems just and proper.

Dated: November 11, 2022          Respectfully submitted,

NEW HAMPSHIRE INSURANCE COMPANY
and NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.


By:   */s/ Ian A. Cooper* _____
      Matthew J. Fink
      Ian A. Cooper
      David J. Rock
      NICOLAIDES FINK THORPE
      MICHAELIDES SULLIVAN LLP
      10 South Wacker Drive, 21st Floor
      Chicago, IL 60606
      Telephone: (312) 585-1400
      mfink@nicolaidesllp.com
      icooper@nicolaidesllp.com
      drock@nicolaidesllp.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.


                        */s/ Ian A. Cooper* _____